UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROHNO GEPPERT,<br><br>    Plaintiff,<br><br>    v.<br><br>THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-05763-JSW<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 15 |

Now before the Court is the motion to remand filed by Plaintiff Rohno Geppert ("Plaintiff"). The Court has considered the parties' papers, relevant legal authority, and the record in the case, and it finds this matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the following reasons, the Court GRANTS the motion to remand.

## BACKGROUND

Plaintiff originally filed this action in the Santa Clara County Superior Court against ten Doe Defendants pursuant to California Code of Civil Procedure section 340.1(*l*). Although only Doe Defendants were named, Plaintiff served the Church of Jesus Christ of Latter-Day Saints, Inc. (the "Church"), the Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, Inc. ("CPB"), and the Corporation of the President of the San Jose Stake of the Church of Jesus Christ of Latter-Day Saints ("CPSJS" and, collectively, "Defendants"). The Church and CPB are Utah residents, and CPSJS is a California resident. CPB removed the action, claiming diversity jurisdiction. (Dkt. 19-1, Pipkin Decl., ¶ 3.) Judge van Keulen remanded the action to state court, reasoning that "Doe" defendants do not create diversity. *Geppert v. Doe 1*, No. 23-cv-03257-SVK, 2023 WL 5804156, at *3 (N.D. Cal. Sept. 7, 2023).

After remand, Plaintiff filed a Second Amended Complaint ("SAC"), substituting

Defendants for Does 1 through 3.  (Pipkin Decl., ¶ 4.)  The SAC alleges causes of action for negligence and intentional infliction of emotional distress ("IIED") against all three named Defendants.  (Dkt. No. 19-1, Ex. C, SAC.)

The Church removed the action a second time, again claiming diversity jurisdiction.  (Dkt. No. 1.)  The Church claims that CPSJS is a sham defendant with no connection to the allegations in the case, and that CPSJS's citizenship should thus not be considered for removal purposes.  (*Id.* ¶¶ 15-17.)  According to a declaration submitted by the Church's Director of Risk Management, Branden Wilson, CPSJS exists for the sole purpose of holding property and does not have any connection to the Milpitas Ward referred to in Plaintiff's Complaint.  (Dkt. No. 19-2, Wilson Decl., ¶ 19.)  Wilson denies that CPSJS ever employed Kenneth Jenks, a former teacher, executive secretary, librarian, and church leader in the Milpitas Ward of the Church who allegedly used his position to sexually abuse children, including Plaintiff.  (*Id.*; Dkt. No. 15-1, SAC, ¶ 32.)

The Church also provides a copy of CPSJS's Articles of Incorporation, which includes the following relevant language:

> The purposes for which this corporation is formed are:
> (a) The specific and primary purposes are to acquire, hold and dispose of church or religious society property for the benefit of religion, for works of charity, and for public worship.
> (b) The general purposes and powers are to administer and manage the affairs, property and temporalities of the corporation, and to carry on any business whatsoever which this corporation may deem proper and convenient in connection with any of the foregoing purposes or otherwise, or which may be calculated, directly or indirectly, to promote the interest of this corporation to the extent permitted by Section 501(e)(3) of the Internal Revenue Code.

(Dkt. No. 19-2, Articles of Incorporation of Corporation of the President of the San Jose Stake Church of Jesus Christ of Latter-Day Saints, ¶ II.)

Plaintiff moves to remand on the basis that the Church has not met its burden to show that CPSJS was fraudulently joined.  Plaintiff contends that CPSJS operated, managed, and controlled the Milpitas Ward and its agents. (Dkt. No. 15, Mot. to Remand, 12:4-8.)  He further argues that discovery would be required to determine the relationship between Jenks and CPSJS.  (Dkt. No. 21, Reply, 6:5-9.)  Plaintiff provides screen captures from the Milpitas Ward website advertising San Jose Stake events as purported proof of CPSJS's connection to this case.  (*Id.*, Ex. 1.)

2

1  The Court will address other relevant facts as necessary in the remainder of this order.

2  **ANALYSIS**

3  **A.   Legal Standard on a Motion to Remand.**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation omitted); *see also* 28 U.S.C. § 1441(a). However, federal courts are courts of limited jurisdiction. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566. A federal court has jurisdiction where the case concerns an issue of federal law or there is complete diversity between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

"Diversity removal requires complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). "In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Id.* (citing *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)).

"Where fraudulent joinder is an issue, … [t]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (internal citations omitted). "Joinder is fraudulent 'if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (quoting *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir.

3

2007)).

## B. Defendants Have Not Met Their Burden to Show CPSJS Is a Sham Defendant.

The burden required to prevail on the fraudulent joinder theory is heavy. Defendants need to show either (2) actual fraud in the pleading or (2) "present[] extraordinarily strong evidence or arguments that [Plaintiff] could not possibly prevail on [his] claims" against CPSJS. *Grancare*, 889 F.3d at 548. There must be "no possibility" of a cause of action against the sham defendant. *Rader v. Sun Life Assur. Co. of Canada*, 941 F. Supp. 2d 1191, 1194 (N.D. Cal. 2013). The Church's evidence that CPSJS is a sham defendant is insufficient to meet the Church's heavy burden.

### 1. The Church Has Not Shown Actual Fraud.

The Church claims actual fraud via an unsupported accusation that Plaintiff fraudulently joined CPSJS after his attorneys searched California records for any entity with citizenship regardless of connection to his claims. (Dkt. No. 19, Opp., 5:10-11.) Plaintiff has alleged that CPSJS jointly operated the Milpitas Ward with the Church and CPB. The Milpitas Ward is a subunit of the San Jose Stake, as demonstrated through Wilson's declaration and the documents produced by Plaintiff. (*See* Wilson Decl., ¶ 7 (explaining that Stakes consist of Wards).) CPSJS's corporate purpose is to both hold property for the Stake and to "administer and manage the affairs" of CPSJS. (Articles, ¶ II.)

Given the Church's own explanation that the Church can interact with the secular world only through incorporation, (*see* Dkt. No. 19, 6:1-8), it is logical that a plaintiff harmed by an agent of the San Jose Stake would seek recovery from CPSJS. Unlike "most" wards and stakes, the San Jose Stake has a corporate existence and owns property via CPSJS. (*See* Wilson Decl., ¶ 8.) It is not clear from the evidence before the Court that CPSJS and the San Jose Stake are separate entities or that Plaintiffs intentionally added CPSJS as a sham defendant. Accordingly, Defendants have not shown actual fraud in Plaintiff's pleading of jurisdictional facts.

### 2. The Church Has Not Shown that Plaintiff Has No Possibility of Prevailing Against CPSJS.

The Church contends that the SAC lacks factual allegations against CPSJS that could form

the basis of liability and that Plaintiff has not alleged a plausible connection between CPSJS and Plaintiff's injury. The Church also asserts that there is no possibility Plaintiff will recover against CPSJS because CPSJS exists only to hold property and any award would be paid by the Church.

The Church's primary argument is that it, not CPSJS, is the proper defendant for torts committed by its leaders or agents. The Church offers as evidence its own articles of incorporation and merger documents with CPB, which include language stating that the Church and its agents should be sued via the Church corporation. (Dkt. No. 19-2, Amended and Restated Articles of Incorporation of the Church of Jesus Christ of Latter-Day Saints, Section Third, ¶ B.) As Plaintiff points out, however, it is Plaintiff who is master of the complaint, regardless of the Church's preference that it be sued in place of its agents. Accordingly, the action must be remanded if there is "any possibility" that CPSJS could be liable to Plaintiff.

Plaintiff brings claims against CPSJS for negligence and IIED. Because Plaintiff needs only one possible cause of action, the Court addresses only the negligence claim. Under California law, the elements for negligence are duty, breach, causation, and injury. *John B. v. Superior Ct.*, 38 Cal. 4th 1177, 1188, 137 P.3d 153, 159 (2006).

Plaintiff has alleged that CPSJS owed a duty to, among other things, prevent Jenks from using the "tasks, premises, and instrumentalities of his position" to abuse Plaintiff. (SAC ¶ 66.) The Church's evidence that CPSJS did not own any of the "premises or instrumentalities" used by Jenks falls far short of the "clear and convincing evidence" standard. Its only support is Wilson's declaration that, at some unspecified time, CPSJS did not own real property or camps and did not employ Jenks. (Wilson Decl., ¶ 19.) While the Church avers that it, not CPSJS, owned the meetinghouses where the Milpitas Ward met at the time Jenks allegedly abused Plaintiff, the Church does not address which entity owned the swimming pool at which Plaintiff was molested or which entity organized the youth swimming excursion. (*See id.*)

Plaintiff further alleges that CPSJS breached its duty because it knew or should have known that Jenks would use his position to sexually abuse children and nevertheless permitted Jenks to have access to children. (SAC ¶¶ 54-56.) CPSJS could not have breached this duty if Jenks never served as its agent. However, the Church offers only scant evidence that Jenks was

5

not an agent of CPSJS: Wilson's conclusory declaration that CPSJS did not "employ" Jenks or have any "clergy, teachers, librarians, executive secretaries, or parishioners." (Wilson Decl., ¶ 19.) No agent or officer of CPSJS offers a declaration to the same effect, and it is unclear on what basis Wilson offers this statement. Moreover, Plaintiff alleges that Jenks was an "agent" of CPSJS, and that Jenks "served as an employee, volunteer, or other individual who performed services on behalf of [Defendants]." (SAC ¶¶ 33, 36.) Wilson's declaration does not address whether Jenks volunteered or otherwise served on behalf of CPSJS.

For the same reasons, the Church has not established that there is no possibility of harm proximately caused by CPSJS's conduct. If Jenks used CPSJS's property or authority to groom and sexually abuse Plaintiff, then it is possible that Plaintiff was harmed as a result.

The Court concludes that the Church has not met its heavy burden of demonstrating fraudulent joinder of CPSJS. Accordingly, complete diversity does not exist in this action, and the matter must be remanded to state court.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion to remand. The Clerk shall close this Court's file.

**IT IS SO ORDERED.**

Dated: February 8, 2024

_____
JEFFREY S. WHITE
United States District Judge